UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**GEORGETTE PETRASY COLLINS,**

    **Plaintiff,**

v.                                         Case No. 8:10-cv-2762-T-17TBM

**MICHAEL J. ASTRUE,**
**Commissioner of the United States**
**Social Security Administration,**

    **Defendant.**
_____/

## REPORT AND RECOMMENDATION

The Plaintiff seeks judicial review of the denial of her claim for Social Security disability benefits and Supplemental Security Income payments. Because the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, I recommend that it be affirmed.

I.

Plaintiff was forty-one years of age at the time of her administrative hearing in June 2009. She stands 5 feet, 7 inches tall and weighed 250 pounds according to her administrative filings. Plaintiff has a high school education. Her past relevant work was as a nursing assistant. Plaintiff applied for disability benefits and Supplemental Security Income on June 12, 2007, alleging disability as of April 20, 2007, by reason of asthma, lupus, hypertension,

and mitral valve prolapse. Plaintiff's applications were denied originally and on reconsideration.

The Plaintiff, at her request, then received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ"). The Plaintiff was represented at the hearing by counsel and testified in her own behalf. Additionally, a vocational expert was called by the ALJ. In essence, Plaintiff testified she is unable to work due to asthma and soreness all over her body due to lupus. She was previously determined disabled for a period from 1995 to 2001 due to her asthma. By her account, the asthma is not as bad now and she has other problems that are worse. She worked as a CNA full-time from 2003 through May 2007 when she stopped work because she was in and out of the hospital with chest pains and bleeding problems which is when it was discovered she had lupus. She is not able to work because she cannot lift due to sharp stabbing pain in her joints especially her hands and legs. She takes pain medication which helps some but does not eliminate the pain. Her pain ranges from a 3 or 4 up to a 9 on a scale from 1 to 10 with 10 being the most painful.

Plaintiff can stand for about fifteen minutes using her cane before the pain in her legs becomes so severe that she needs to sit. She can sit for up to thirty minutes before her legs start hurting. She can walk approximately four to five blocks before needing to sit due to leg pain. She can lift no more than a laundry basket because anything heavier causes sharp pain in her back and legs. Plaintiff takes medication for her pain but it makes her drowsy, and the medication she takes for her asthma makes her nauseated.

As for daily activities, Plaintiff wakes up around 7:30 or 8:00 a.m. She will straighten up around her house, sweep, read, and watch television. When she straightens up her house, she can only work ten to fifteen minutes a day. She does some cooking but can only stand fifteen to twenty minutes to cook. She can do the laundry but her fiancee will clean the bathrooms. She cannot bend her knees to go down to the floor, but she can bend at the waist to pick up things off the floor. Her sons visit her at the house, as well as neighbors. She does not go out to visit with anyone. She takes a bus to get to her doctors' appointments. She is able to sleep without difficulty. (R. 27-42).

Next, the ALJ took testimony from William Harvey, a vocational expert (VE). The VE initially classified Plaintiff's past work as a deli clerk as light exertional, unskilled, with an SVP of 2, and her work as a certified nursing assistant (CNA) as medium exertion, semi-skilled, with an SVP of 4. Upon a hypothetical that assumes an individual of the same age, education, and work experience as the Plaintiff who is capable of sedentary work with a sit/stand option; limited to occasional bending, stooping, crouching, and kneeling; and capable of performing routine tasks in an air-conditioned environment, the VE testified that such individual could perform the jobs of order clerk, telephone clerk, and medical supplies assembler. With the added limitation that the individual is unable to sit or stand more than two hours per day, must take a ten-minute unscheduled break every hour, and would miss work four days per month, the VE testified that no jobs would be available. (R. 42-46).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are addressed herein as necessary.

By his decision of June 30, 2009, the ALJ determined that while Plaintiff has severe impairments related to degenerative joint disease of the knees, history of lupus, asthma, sleep apnea, hypertension, reflux disease, and obesity, she nonetheless had the residual functional capacity to perform sedentary exertional work with an occasional limitation for bending, stooping, crouching and kneeling, allowing for a sit/stand option, and performing routine tasks in an air-conditioned environment. Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to her in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 13-21). The Appeals Council considered additional evidence and denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that she has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

III.

The Plaintiff raises two claims on this appeal. First, she complains that the ALJ failed to find that lupus was a severe impairment. Next she complains that the ALJ failed to give controlling weight to the opinion of Dr. Sankoorikal and subsequently find the claimant disabled.

By her first claim, Plaintiff urges there are objective clinical findings in the records supporting a diagnosis of lupus and the ALJ erred in making his own finding that she did not have lupus. Specifically, Plaintiff points to lab tests from an emergency room visit in April 2007 revealing a high sedimentation rate, a May 2007 hospital stay wherein lab tests showed a low hematocrit and low red blood cells with a diagnosis including lupus. Even though Plaintiff had a negative ANA, she urges this is not presumptive that there is no lupus. Rather, a rheumatologist and a hospital diagnosed her with lupus, she has symptoms and clinical findings which are consistent with lupus, and thus the ALJ should have found Plaintiff suffers from lupus and that it is a severe impairment.

The Commissioner responds that Plaintiff's argument is unavailing as the ALJ found in Plaintiff's favor at step two and continued with the remaining steps in the sequential evaluation process. The ALJ found Plaintiff had a history of lupus but that this condition did

not meet or medically equal a listing. Further, the ALJ considered Plaintiff's lupus at step four along with the other medical evidence of record.

As for her first claim, insofar as Plaintiff claims error in the ALJ's finding of "history of lupus," rather than lupus, there is no error requiring reversal. First, the finding of history of lupus is clearly supported by and taken from the medical record. *See e.g.* (R. 336, 363).[1] While the record also reflects diagnostic impressions for lupus, *see e.g.* (R. 287-88, 380, 400, 402), the mere diagnosis of a condition is not controlling. Rather it is the functional limitations caused by the condition, by whatever name, which are determinative of the disability issue. *See Moore v. Barnhart*, 405 F.3d 1208, 1213, n.6 (11th Cir. 2005); *McGruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). Here, a fair reading of the decision reflects the ALJ's consideration of the whole of the medical record, including those entries related to her lupus (R. 15-17). Even if her condition is better described as lupus, there is no cause to reverse the decision in the absence of a showing that the ALJ failed to properly assess the functional limitations from the condition. Here, Plaintiff fails to make such showing.

To the extent that Plaintiff's first claim is intended to assert error at step two of the evaluation process, it is also unavailing. At step two of the five-step evaluation process prescribed by the regulations, the ALJ is called upon to determine whether a claimant's impairments are severe. 20 C.F.R. §§ 404.1520, 416.920. Under the regulations, if the claimant does not have an impairment or combination of impairments which significantly limits her ability to do basic work activities, then she is not disabled. The ability to do basic

---

[1] Notably, one of those describing her condition as a "history of lupus" was Dr. Sankoorikal, a treating rheumatologist.

7

work activities is defined as "the abilities and aptitudes necessary to do most jobs." *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987) (citing 20 C.F.R. §§ 404.1521(b), 416.921(b)).[2] In application, this inquiry is a "threshold" inquiry. It allows only claims based on the slightest abnormality to be rejected. *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984). Thus, an impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. *Id.* However, the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement at step two. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987).

Here, the decision reflects affirmative findings at step two and continuation of the five-step evaluation process. Thus, there is no error requiring reversal at step two. And, as discussed below, Plaintiff does not demonstrate error in the conclusion that her combination of conditions, including lupus, did not prevent her from performing sedentary work of the type available in the economy.

By her second claim, Plaintiff urges the ALJ erred in failing to give controlling weight to a functional questionnaire completed by Dr. Anthony Sankoorikal. By that assessment, completed in January 2009, Plaintiff was so limited in her ability to sit, stand and

---

[2]Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling, as well as capacities for seeing, hearing, and speaking; understanding, remembering and carrying out simple instructions; responding appropriately to supervisors and fellow employees and dealing with changes in the work setting; and the use of judgment. *Id.*

walk that even sedentary work was precluded. (R. 419-24). Again, upon my review of the decision in light of the medical evidence, the Plaintiff fails to demonstrate an error requiring the decision be reversed.

There is no disagreement on the applicable standard. When considering a treating physician's opinions, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). Such a preference is given to treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments. *Lewis*, 125 F.3d at 1440. Good cause for rejecting a treating source's opinion may be found where the treating sources's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record. *Phillips*, 357 F.3d at 1240-41 (citing *Lewis*, 125 F.3d at 1440); *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

Here, the decision reflects that in arriving at his conclusion that Plaintiff could still do sedentary work, the ALJ first reviewed the medical records, including Dr. Sankoorikal's treatment notes, and then addressed the opinion evidence. As for Dr. Sankoorikal's treatment notes the ALJ stated,

> The record indicates that the claimant was referred to rheumatology specialist Dr. Sankoorikal in February 2008. She complained of pain, stiffness, and fatigue, but examination showed only some crepitus in the knees and no acute distress or synovitis. Laboratory studies for ANA, rheumatoid factor, and sedimentation rate were negative. The physician adjusted the claimant's dose of Plaquenil. In April 2008, the claimant presented with no joint pain and no rash; examination showed no edema;

> and ANA was negative. Dr. Sankoorikal diagnosed history of lupus.
> Finally, in July 2008, the claimant had complaints of knee pain, examination showed crepitus but no edema, and diagnosis was degenerative joint disease of the knees. Dr. Sankoorikal recommended knee exercises (Exhibit 13F, l8F).

(R. 17). While decrying the ALJ's handling of this doctor's evidence, the Plaintiff makes no showing that these findings are inaccurate or that such do not support the conclusion for the capacity to perform sedentary work.

As for this doctor's opinions, the ALJ gave substantial weight to certain of his opinions but little weight to others. Thus, while the ALJ credited Dr. Sankoorikal's opinions that Plaintiff could lift 10 pounds occasionally, walk 1-1/2 blocks, and stand and sit for 20 minutes at a time alternating at will,[3] he discounted the opinions that Plaintiff could walk, stand and sit for less than 2 hours each total per workday, needed a cane for assistance with standing and ambulation, needed unscheduled breaks during the workday, and would miss more than four workdays per month. In particular, the ALJ stated that,

> In this regard, the opinion is not supported by the medical evidence of record, even the physicians own treatment notes. Clinic notes did not show joint swelling or synovitis, but only rare lower extremity edema, most likely related to hypertension, only occasional wheezing related to asthma, and no other significant findings. Dr. Sankoorikal's notes showed only crepitus in the knees consistent with degenerative joint disease, but no synovitis or edema, and in April 2008, the claimant denied any rash or joint pain, ANA test was negative, and sedimentation rate and rheumatoid factor were normal. There was no evidence from Dr. Sankoorikal or any other physician to support that the claimant had persistent swelling or significant limitation of motion or tenderness in her hands and knees and there was

---

[3] According to the ALJ, this assessment was "supported by the medical evidence and other evidence of record, including the claimant's own reports of functioning and ability to lift a laundry basket, walk a few blocks, and stand and sit for 15 minutes at a time." (R. 19). Presumably, Plaintiff does not challenge these findings.

> no evidence to support that the claimant had severe fatigue, malaise, weakness, impaired vision, easy bruising, or pleurisy as indicated by Dr. Sankoorikal on the residual functional capacity questionnaire. Dr. Sankoorikal followed the claimant only since February 2008 and evaluated the claimant on only 3 or 4 occasions.

(R. 19). According to Plaintiff, some of these statements are accurate, others were not[4] and in any event, the ALJ here, impermissibly substituted his opinions about the symptoms of lupus for those of the doctor. The Commissioner responds that the medical evidence, in particular that from Dr. Sankoorikal himself, supports the ALJ's decision to discount the doctor's opinions on Plaintiff's ability to sit and stand for less than two hours a day, her need for a cane, her need for unscheduled breaks and the likelihood of her missing four or more days of work per month. Here, I am obliged to conclude that the Commissioner is correct.

In addition to the above stated reasons for discounting the opinion evidence, the ALJ offered the following additional findings and conclusions as well,

> The claimant has a history of lupus but no documentation of elevated antinuclear antibody or other recent testing positive for lupus. Examinations showed only some crepitus in the knees consistent with degenerative joint disease, but no synovitis or other abnormality of the joints, no rash, no fever, and no other signs of lupus. The claimant complained of fatigue on only one documented occasion, in February 2008. Dr. Sankoorikal inconsistently reported that the claimant was fully ambulatory and that she needed a cane for assistance with standing and walking. No other physician noted that the claimant needed an assistive device and the claimant presented at hearing carrying a cane, but not using it. There were no objective findings to support limitation of function of the claimant's knees of a degree that would require use of a cane.

---

[4] Contrary to these findings, Plaintiff urges that the record included findings of pneumonia, bronchitis, and asthma and cramping of arms and legs, blurred vision, aching muscles, back pain, thrush, edema and a positive sedimentation rate. I do not disagree with this assertion but find it unconvincing when the whole of the ALJ's findings are considered.

11

> Thus, there is nothing in the medical evidence to support the assertion that the claimant would be unable to lift 10 pounds occasionally and sit/stand throughout the workday changing position at will and nothing in the record to support that she would require unscheduled work breaks or miss 2, 4 or more days of work per month. The claimant reported that she did chores and cooking for 15 minutes at a time and on a regular basis, spent 45-60 minutes at church, read for 60 minutes, played video games for 15 minutes, and was able to take the bus to appointments. These activities are not inconsistent with the performance of sedentary level work. The treatment notes do not reflect that the claimant complained to treating physicians of continuing or severe adverse side effects of medications.

(R. 18).

As noted above, under the applicable standard, the ALJ may discount the opinion evidence– even a treating doctor's opinion– when the evidence supports a contrary finding or the treating source's opinion is inconsistent with his or her own medical record. Here, the ALJ drew from the Plaintiff's testimony, other clinical evidence, and that from Dr. Sankoorikal himself, to fashion explicit reasons for discounting certain of the doctor's opinions. I find such supported by substantial evidence and adequate to comply with the applicable standard. A remand on this claim is not warranted.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, and I recommend that it be affirmed. I further

recommend that the Clerk be directed to enter Judgment in favor of the Defendant and to close the file.

Respectfully submitted this
27th day of July 2012.

_____
THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6.

Copies furnished to:
The Honorable Elizabeth A. Kovachevich, United States District Judge
Counsel of Record